**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| TIMOTHY D. NELSON, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 18-1880 (RC) |
| | : | | |
| v. | : | Re Document No.: | 73 |
| | : | | |
| ANTHONY J. BLINKEN, | : | | |
| *Secretary of State*, | : | | |
| | : | | |
| Defendant. | : | | |

**MEMORANDUM OPINION**

**GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR PARTIAL DISMISSAL**

**I.  INTRODUCTION**

*Pro se* Plaintiff Timothy Nelson brings this suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, against the Secretary of State in his official capacity as head of the United States Department of State (the "Department") alleging that the Department engaged in unlawful employment actions against Nelson. *See generally* Compl., ECF No. 1.[1] Specifically, Nelson's complaint alleges claims for retaliation for a protected activity as well as discrimination motivated by his religion and his spouse's national origin. *Id.*

The Court previously denied without prejudice the Department's prior motion for partial dismissal and ordered the parties to submit supplemental briefing on whether equitable tolling or estoppel principles apply to Nelson's religious and national origin discrimination claims. *See Nelson v. Blinken* ("*Nelson I*"), No. 18-cv-1880, 2023 WL 7156516 (D.D.C. Oct. 31, 2023).

---

[1] Due to the inconsistent paragraph and page numbering of the underlying documents, when citing to the complaint, and other documents filed along with the complaint, the Court uses the page numbers generated by ECF.

Nelson filed a supplemental brief, *see* Pl.'s Suppl. Br., ECF No. 71, after which the Department filed a renewed motion for partial dismissal, *see* Def.'s Renewed Mot. Partial Dismissal, ECF No. 73 ("Def.'s Mot. Dismiss").  Plaintiff has filed a memorandum in opposition to the Department's motion to dismiss, ECF No. 74 ("Pl.'s Opp'n Mot. Dismiss"), and the Department filed a reply in support of its motion to dismiss, ECF No. 75, ("Def.'s Reply Supp. Mot. Dismiss").  For the following reasons, the Court grants in part and denies in part the Department's renewed motion for partial dismissal.

## II.  FACTUAL BACKGROUND

Timothy Nelson is employed by the Department of State.  *See* Compl. at 2, 5.  While employed as a Political/Military Affairs Officer by the Office of Russian Affairs, he used the Equal Employment Opportunity Commission ("EEOC") process to report bullying and the creation of a hostile work environment by his supervisors.  *Id.* at 21–22.  When the bullying continued, Nelson filed a formal EEOC complaint with the Department.  *Id.* at 21.  That EEOC complaint asserted that his supervisors retaliated against him because of his protected EEOC activity.  *Id.* at 16.  As the Court concluded in its earlier opinion, Nelson's EEOC complaint did not include claims for religious or national origin discrimination.  *Nelson I*, 2023 WL 7156516, at *3.  And an investigation by the Department, followed by a final agency decision in February 2016, concluded that Nelson's complaint "did not prove that the Agency subjected him to the alleged discrimination."  Compl. at 16, 21.  Accordingly, Nelson appealed the Department's final decision to the EEOC.  *Id.* at 15.

In April 2016, while his case was pending on appeal before the EEOC, Nelson sent the EEOC a letter as a "supplemental submission responding to the main points of the Final Agency Decision" with additional allegations against his supervisors in the Department.  *See id.* at 21.

That letter alleged that—in addition to retaliation for protected activity—his supervisors had also discriminated against Nelson based on his "deeply held" "personal positions" from his Christian faith. *Id.* at 21, 24, 26–27.

Later, in January of 2018, Nelson also sent an email to the Department's Office of Civil Rights informing the Department that he had discovered additional documents through an unrelated agency proceeding that he believed demonstrated that his supervisors at the Department had also discriminated against him based on his wife's national origin. *See* Pl.'s Suppl. Br., Ex. 1 at 3–4, ECF No. 71-1. The following day, the Department responded that it was no longer directly processing his EEO complaint because Nelson's case was pending before the EEOC, but that because he had provided the additional information "via electronic mail, our Office will also inform the EEOC of your request for submission of additional information, which may be classified." *See id.* at 3. The Department also stated that it would "provide you or your representative any update from [the Office of Federal Operations] on how to proceed in the submission of that information, if you have not received such guidance." *Id.* But Nelson contends that the Department never in fact notified the EEOC of the additional evidence or gave him the promised guidance on how to submit the information about national origin discrimination. *See* Pl.'s Suppl. Br. at 29.

Eventually, in May of 2018, the EEOC affirmed the Department's final decision, without addressing Nelson's additional allegations of religious or national origin discrimination. *See* Compl. at 15–18. Accordingly, Nelson filed suit in this Court alleging claims for retaliation for protected activity as well as discrimination motivated by his religion and his spouse's national origin. *See Nelson I*, 2023 WL 7156516, at *1. This Court concluded that Nelson failed to adequately exhaust his religious discrimination and national origin claims because he had not

3

included those claims in his initial EEOC complaint. *Id.* at *3. The Court, however, denied without prejudice the Department's motion to dismiss and ordered the parties to brief whether Nelson's claims were entitled to equitable tolling or estoppel. *Id.* at *3–4. The parties have now briefed the issue of equitable tolling and estoppel and the Department has filed a renewed motion to dismiss on the pleadings.

### III.  LEGAL STANDARD

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The "[p]leadings include any 'copy of a written instrument that is an exhibit to a pleading,' such as relevant and authentic documents attached to the complaint." *Dist. No. 1, Pac. Coast Dist., Marine Eng'rs Beneficial Ass'n., AFL-CIO v. Liberty Mar. Corp.*, 933 F.3d 751, 760 (D.C. Cir. 2019) (citation omitted); *see also Stewart v. Nat'l Educ. Ass'n*, 471 F.3d 169, 173 (D.C. Cir. 2006) ("In determining whether a complaint states a claim, the court may consider the facts alleged in the complaint, documents attached thereto or incorporated therein, and matters of which it may take judicial notice."); *Latson v. Holder*, 82 F. Supp. 3d 377, 386 (D.D.C. 2015). To prevail on a Rule 12(c) motion, "[t]he moving party must demonstrate its entitlement to judgment in its favor, even though the court evaluating the 12(c) motion will accept as true the allegations in the opponent's pleadings, and as false all controverted assertions of the movant." *Liberty Mar. Corp.*, 933 F.3d at 760–61 (internal quotation marks omitted). As relevant here, the Department's 12(c) motion is "functionally equivalent to a Rule 12(b)(6)" motion. *Rollins v. Wackenhut Servs., Inc.*, 703 F.3d 122, 130 (D.C. Cir. 2012). The Court, therefore, accepts Nelson's allegations as true and draws "all reasonable inferences" in his favor when assessing the Department's 12(c) motion. *See Liberty Mar. Corp.*, 933 F.3d at 761 (citation omitted). "A *pro se* complaint is to be liberally

construed and however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Guerrero v. Vilsack*, 134 F. Supp. 3d 411, 418 (D.D.C. 2015) (internal quotation marks omitted).

### IV.  ANALYSIS

The issue before the Court is whether Nelson's religious and national origin discrimination claims should be dismissed because he failed to timely exhaust his administrative remedies. Individuals "who fail[ ] to comply, to the letter, with administrative deadlines 'ordinarily will be denied a judicial audience.'" *Brown v. Marsh*, 777 F.2d 8, 13 (D.C. Cir. 1985) (citation omitted). Because the Court has already concluded that Nelson did not timely administratively exhaust his claims, the issue here turns on whether Nelson's claims are entitled to equitable tolling or equitable estoppel despite Nelson's failure to timely raise them with the Department. This is so because the administrative time limits contained in Title VII are not "jurisdictional bars to bringing suit . . . but function[ ] like statutes of limitations," and "these time limits are subject to equitable tolling, estoppel, and waiver." *Staropoli v. Donahoe*, 786 F. Supp. 2d 384, 389 (D.D.C. 2011) (citations omitted). "Because untimely exhaustion of administrative remedies is an affirmative defense, the defendant bears the burden of pleading and proving it. If the defendant meets its burden, the plaintiff then bears the burden of pleading and proving facts supporting equitable avoidance of the defense." *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997) (citation omitted).

"As a general matter, equitable tolling pauses the running of, or tolls, a statute of limitations when a litigant has pursued his rights diligently but some extraordinary circumstance prevents him from bringing a timely action." *Lozano v. Montoya Alvarez*, 572 U.S. 1, 10 (2014) (internal quotation marks omitted). "The party arguing for equitable tolling bears the burden of

demonstrating entitlement to it." *Young v. Sec. & Exch. Comm'n*, 956 F.3d 650, 655 (D.C. Cir. 2020). Equitable tolling is applied only "sparingly." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). A plaintiff is entitled to equitable tolling "if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)); *see also Guerrero*, 134 F. Supp. 3d at 429 n.17 ("Equitable tolling under Title VII for federal employees functions the same as it does in private lawsuits.").

The burden to plead equitable tolling is heavy, and courts will toll a filing deadline "only in rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result." *Head v. Wilson*, 792 F.3d 102, 111 (D.C. Cir. 2015) (internal quotation marks omitted). Therefore, equitable tolling is not available to a litigant who misses a deadline because of a "garden variety claim of excusable neglect" or a "simple miscalculation." *Holland*, 560 U.S. at 651–52 (internal quotation marks omitted). That said, the D.C. Circuit has held that "[i]n Title VII cases, equitable tolling of statutes of limitations can occur in several circumstances," particularly when a *pro se* litigant "make[s] diligent but technically defective efforts to act within a limitations period." *Bowden*, 106 F.3d at 438. "Courts consider a plaintiff's intelligence and familiarity with the process when determining whether equity counsels in favor of excusing a failure to exhaust." *Chavers v. Shinseki*, 667 F. Supp. 2d 116, 128 (D.D.C. 2009) (internal quotation marks omitted).

To determine whether a plaintiff has exercised due diligence, judges conduct an "equitable, often fact-intensive" inquiry, considering "in detail" the facts of each case to decide

whether a litigant's efforts were diligent under the circumstances. *Holland*, 560 U.S. at 653–54 (citation omitted). For instance, the court in *Taylor v. Perry St. Preparatory Public Charter School* held that a plaintiff had adequately alleged diligent pursuit of his rights when he alleged that he had filed a timely EEOC complaint but that the agency had misplaced that complaint. 242 F. Supp. 3d 1, 4–5 (D.D.C. 2017).

Additionally, for a plaintiff's circumstances to be "sufficiently 'extraordinary' to support equitable tolling, the circumstances that caused a litigant's delay must have been beyond its control." *Menominee Indian Tribe of Wis. v. United States*, 764 F.3d 51, 58 (D.C. Cir. 2014). "The circumstance that stood in a litigant's way cannot be a product of that litigant's own misunderstanding of the law or tactical mistakes in litigation." *Id.* "Rather, equitable tolling is appropriate only in rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result." *Young*, 956 F.3d at 656 (internal quotation marks omitted); *see also Chung v. U.S. Dep't of Just.*, 333 F.3d 273, 278 (D.C. Cir. 2003) (holding that equitable tolling applies when "the plaintiff despite all due diligence . . . is unable to obtain vital information bearing on the existence of his claim" (internal quotation marks omitted)).

Under the similar but distinct doctrine of equitable estoppel, defendants are prevented from utilizing a statute of limitations defense when they affirmatively misled plaintiffs leading to the untimely filing. "Equitable estoppel . . . is available only when a plaintiff alleges that the defendant has engaged in some form of 'affirmative misconduct' that prevented a timely filing." *Feloni v. Mayorkas*, No. 22-cv-2094, 2023 WL 3180313, at *5 (D.D.C. May 1, 2023) (internal quotation marks omitted). "Whereas equitable tolling allows a plaintiff to avoid the bar of the limitations period if despite all due diligence he is unable to obtain vital information bearing on

7

the existence of his claim . . . equitable estoppel in the statute of limitations context prevents a defendant from asserting untimeliness where the defendant has taken active steps to prevent the plaintiff from litigating in time." *Currier v. Radio Free Eur./Radio Liberty, Inc.*, 159 F.3d 1363, 1367 (D.C. Cir. 1998); *Jankovic v. Int'l Crisis Grp.*, 494 F.3d 1080, 1086 (D.C. Cir. 2007) (same).

### A. Religious Discrimination Claim

Nelson argues that he is entitled to equitable tolling with respect to his religious discrimination claim.  *See* Pl.'s Suppl. Br. at 3, 5, 7–8, 10–12.  As explained above, to qualify for equitable tolling, Nelson must adequately plead (1) that he diligently pursued his rights and (2) that some extraordinary circumstance prevented him from timely exhausting his religious discrimination claim.  *See Holland*, 560 U.S. at 649.

Here, Nelson has not adequately alleged either that he diligently pursued his rights or that some extraordinary circumstance prevented him from timely exhausting his religious discrimination claim.  Nelson argues that he only realized that he had a religious discrimination claim upon reviewing the evidence in his case in "retrospect" and that once he discovered his religious discrimination claim he included that claim in his formal appeal to the EEOC by referencing that evidence in his April letter to the EEOC.  Compl. at 23; Pl.'s Suppl. Br. at 3, 5, 7–8, 10–12.  But while a plaintiff's inability "to obtain vital information bearing on the existence of his claim" is a proper ground for equitable tolling, *Chung*, 333 F.3d at 278 (citation omitted), a plaintiff must still show that he has been pursuing his rights diligently to qualify for equitable tolling, *see Holland*, 560 U.S. at 649.  Although Nelson explains that he did not fully understand why his supervisors had been bullying him when he initially filed his EEOC complaint, his

8

filings reveal that he had information about the Department's alleged religious discrimination while his EEOC complaint was pending before the Department. *See* Compl. at 22–23.

Nelson's letter to the EEOC in April of 2016—which is included with his complaint—indicates that Nelson had the relevant information about his supervisors' alleged religious discriminatory animus as early as 2014. *See id.* at 24–26. Nelson explains in that letter that in a 2014 counseling session prior to the filing of his EEOC complaint, Nelson's supervisor made comments that were dismissive of his "deeply held" "personal positions." *See id.* at 23–24. Nelson's letter also states that his supervisor's 2014 performance evaluation was critical of Nelson's "deeply held" "personal beliefs" and "convictions." *Id.* at 26. And Nelson's letter states that his supervisor "cast aspersion on another Christian who had suggested talking with Putin via a particular Christian intermediary whom Putin respected." *Id.* at 27.

It appears from the records attached to the complaint, therefore, that Nelson had the information to support his religious discrimination claim before the Department made its final decision on his initial EEOC complaint. Nelson explained, however, that he only realized he had a religious discrimination claim when he took a "*closer look* at the overwhelming evidence . . . in retrospect." *Id.* at 23 (emphasis added). Unlike situations in which plaintiffs have no way of knowing that they have a claim, *see Currier*, 159 F.3d at 1367 (explaining that tolling may apply when "if despite all due diligence [a plaintiff] is unable to obtain vital information bearing on the existence of his claim"), Nelson had the relevant facts for his religious discrimination claim yet failed to include those facts in his initial EEOC complaint or amend his EEOC complaint before the Department's final decision, *see Bender v. Rocky Mountain Drilling Assocs.*, 648 F. Supp. 330, 335 (D.D.C. 1986) (explaining that a "limitation period is not tolled if a plaintiff has a reasonable basis to suspect a wrong, and fails to exercise due diligence to investigate the

9

matter"). Nelson himself characterized the evidence that he had as "overwhelming." Compl. at 23. This is not a situation where Nelson was, "despite all due diligence," "unable to obtain vital information bearing on the existence of his claim." *Barbett v. Logistics Application, Inc.*, 845 F. Supp. 2d 164, 167 (D.D.C. 2012) (citation omitted).

Although the Court recognizes that Nelson did eventually attempt to alert the EEOC that his supervisors had discriminated against him based on his religious beliefs, his attempt was too little too late. *See* 29 C.F.R. § 1614.106(d) (describing how plaintiffs may amend their EEOC complaints). Because Nelson had the information necessary to ask to amend his EEOC complaint before the Department's final decision—and yet failed to do so—the Court concludes that Nelson did not diligently pursue his rights.

Relatedly, the Court also concludes that no extraordinary circumstances prevented Nelson from amending his EEOC complaint to include his religious discrimination claim. Extraordinary circumstances exist when some barrier outside of a plaintiff's control prevents the plaintiff from filing within the prescribed time. *See Barnes v. Contee*, No. 19-cv-2190, 2022 WL 4355273, at *4 (D.D.C. Sept. 20, 2022). As explained above, it appears that Nelson had the information underlying his religious discrimination claim by 2014—before the Department issued its final decision. At that point in the proceedings, a mechanism existed for Nelson to amend his EEOC complaint to add a religious discrimination claim. *See* 29 C.F.R. § 1614.106(d) (explaining method to amend EEOC complaint). The fact that Nelson did not further investigate his case and amend his EEOC complaint to include a claim of religious discrimination is an example of a "garden variety claim of excusable neglect" or a "simple miscalculation." *Holland*, 560 U.S. at 651–52 (internal quotation marks omitted); *see also Young*, 956 F.3d at 656 (explaining that a "garden variety claim of excusable neglect" is

10

insufficient for equitable tolling (citation omitted)).  It is immaterial that no one informed Nelson that he could seek to amend his complaint to include that claim because "ignorance of the law or unfamiliarity with the legal process will not excuse [a litigant's] untimely filing, nor will a lack of representation during the applicable filing period."  *United States v. Cicero*, 214 F.3d 199, 203 (D.C. Cir. 2000).  Moreover, even after his late discovery of his religious discrimination claim, Nelson could have attempted to file a new claim at the Department rather than simply sending a letter to the EEOC.  *See* Def.'s Mot. Dismiss at 13.  The EEOC regulations require that plaintiffs include the bases for their claims in their EEOC complaints and if a plaintiff would like to add an additional claim in his EEOC adjudication he must do so by amending his complaint.  *See* 29 C.F.R. § 1614.106.  Nelson did not seek to amend his EEOC complaint.  *See Menominee Indian Tribe*, 764 F.3d at 58 ("The circumstance that stood in a litigant's way cannot be a product of that litigant's own misunderstanding of the law or tactical mistakes in litigation.").  It is Nelson's burden to show that he was unable to raise his religious discrimination claim at the Department level, *see Bowden,* 106 F.3d at 437, and he has not satisfied that burden here.  Because Nelson had the information that he now uses to justify his religious discrimination claim at a time when he could have amended his EEOC complaint yet did not do so, the Court concludes that equity does not require tolling Nelson's religious discrimination claim.[2]

---

[2] Equitable estoppel does not apply to Nelson's claim for religious discrimination either because Nelson points to no affirmatively false representation on the part of the Department that was intended to trick Nelson into untimely filing his EEOC complaint.  *See Hall v. Dep't of Com.*, No. 16-cv-1619, 2018 WL 2002483, at *5 (D.D.C. Apr. 30, 2018) (explaining that "[a]n agency's mere failure to provide information about the EEO process reflects passive rather than affirmative conduct and is not enough to warrant invoking equitable estoppel" (cleaned up)).

### B.  National Origin Discrimination

Nelson separately argues that he is entitled to equitable tolling or equitable estoppel with respect to his claim for national origin discrimination.  The Court addresses these arguments in turn.

### 1.  Equitable Tolling

As already explained, to plead facts sufficient for equitable tolling, a plaintiff must allege (1) that he diligently pursued his rights and (2) that extraordinary circumstances prevented him from timely exhausting his claim.  *See Holland*, 560 U.S. at 649.  The Court concludes that Nelson diligently pursued his rights with respect to his national origin claim and that extraordinary circumstances prevented him from timely exhausting that claim.

As explained by Nelson, Nelson attempted "myriad times" to obtain contemporaneous emails from his supervisors but the Department refused to disclose those emails to him until forced to do so by the Foreign Service Grievance Board in an unrelated agency proceeding.  *See* Pl.'s Opp'n Mot. Dismiss at 12.  Nelson contends that the reason he was not able to obtain this evidence prior to his 2018 email to the Department was because the Department denied him access to the discovery materials that he sought, which contained the information about his supervisors' national origin discrimination.  *See* Pl.'s Suppl. Br. at 7–8.  Nelson argues that the Department additionally prohibited access to these materials by improperly classifying documents so that he could not access them.  *See id.* at 13–14.  And Nelson says that because the information he wished to show the EEOC was improperly classified, he was not able to present that information to the EEOC.  *Id.* at 14.

To begin, it appears to the Court that Nelson's inability to access relevant information about the Department's alleged national origin discrimination constitutes an extraordinary

circumstance. *See Chung*, 333 F.3d at 278 (holding that equitable tolling applies when "the plaintiff despite all due diligence . . . is unable to obtain vital information bearing on the existence of his claim" (internal quotation marks omitted)); *Singletary v. Dist. of Columbia*, 225 F. Supp. 2d 43, 60 (D.D.C. 2002) ("When the employee is excusably ignorant of the employer's discriminatory act or the existence of a claim, [equitable tolling] may be invoked to toll the statutory period."); *Sellers v. Nielsen*, 376 F. Supp. 3d 84, 94 (D.D.C. 2019) ("[I]f an employee did not at the time know or have reason to know that an employment decision was discriminatory in nature, the time limits for filing an administrative complaint may be tolled." (citation omitted)). This is so because, as alleged by Nelson, the Department physically prevented Nelson from accessing relevant materials and improperly classified those materials so that he could not use them. *See* Pl.'s Suppl. Br. at 7–8, 13–14 ("HR provided him with a safe for his sole use but subsequently denied him access to his evidence . . . ."); *see also* Compl. at 8–9. Read in the light most favorable to Nelson, the Court concludes that Nelson's complaint, and the documents referenced therein, allege that Nelson was unable to obtain vital information bearing on the existence of his national origin claim despite his diligent attempts to obtain that evidence. *See* Compl. at 8–9; *see also* Pl.'s Suppl. Br. at 4 ("The Department is accustomed to misusing classification to hide managerial misconduct and is notoriously inept at removing classifications from law-breaking communications."); *id.* at 6 ("The Department even took measures repeatedly to hide that evidence of its wrongdoing.").

The Court also concludes that Nelson diligently pursued his rights with respect to his national origin claim. Nelson appears to have sought discovery of the underlying material that he relies on for his national origin discrimination claim for several years without success. *See* Pl.'s Opp'n Mot. Dismiss at 10 ("Plaintiff has asked myriad times for those folders and for any

13

appropriate authority to view them as they contain the contemporaneous writings of management regarding their actions in this case."); Pl.'s Suppl. Br. at 10, 13 (describing efforts to obtain evidence that the Department initially prevented him from accessing). And it appears from the record in this case that Nelson promptly informed the Department of his national origin claim after he obtained access to evidence of those claims. *See* Pl.'s Suppl. Br., Ex. 1 at 4–5. Nelson emailed the Department's Office of Civil Rights that he had "just found, via discovery in a separate . . . case" documents that revealed that his supervisors' actions "were additionally motivated in part by discrimination against national origin." *Id.* Although Nelson did not notify the EEOC of this information directly, he did notify the Department. *Id.* And the Department informed Nelson that it would forward his message to the EEOC. *Id.* Moreover, it would have been fruitless for Nelson to inform the EEOC directly even if he had done so because, as the Department explains in its motion to dismiss, "EEOC regulations do not provide for amendment" to an EEOC complaint once an EEOC case is on appeal before the EEOC. *See* Def.'s Mot. Dismiss at 12. Accordingly, the Court concludes that extraordinary circumstances beyond Nelson's control prevented Nelson from learning about his national origin claim until 2018 and from amending his EEOC complaint at that time. And Nelson timely filed suit in this Court shortly after the EEOC's decision affirming the Department's final decision. *See generally* Compl. Therefore, the Court concludes that Nelson is entitled to equitable tolling of his national origin discrimination claim.

2. Equitable Estoppel

Nelson also appears to argue that he is entitled to equitable estoppel regarding his national origin discrimination claim. *See* Pl.'s Suppl. Br. at 3 ("Misleading plaintiffs and being unresponsive as to proper process would only serve to enable eventual immunity from

accountability."). "[E]quitable estoppel in the statute of limitations context prevents a defendant from asserting untimeliness where the defendant has taken active steps to prevent the plaintiff from litigating in time." *Currier*, 159 F.3d at 1367; *Jankovic*, 494 F.3d at 1086 ("A defendant who engages in 'inequitable conduct' can be equitably estopped from invoking the statute of limitations." (quoting *Chung*, 333 F.3d at 278)).

Courts have "excused parties who were misled about the running of a limitations period . . . by a government official's advice upon which they reasonably relied." *Bowden*, 106 F.3d at 438. For instance, in *Hairston v. Tapella*, the court held that an EEOC counselor's affirmative advice that a plaintiff should withhold the filing of a formal complaint until he accrued more evidence, which led to plaintiff's failure to file within the limitation period, was a sufficient ground for estoppel. 664 F. Supp. 2d 106, 113 (D.D.C. 2009). But courts in this circuit have also acknowledged "the Supreme Court's powerful cautions against application of the doctrine [of equitable estoppel] to the government as normally barring its use to undercut statutory exhaustion requirements." *Rann v. Chao*, 346 F.3d 192, 197 (D.C. Cir. 2003) (citation omitted). Before a court concludes that equitable estoppel is warranted, the plaintiff must allege facts supporting: (1) that the government made a "false representation" with "a purpose to invite [in]action by the party to whom the representation was made"; (2) that the plaintiff was ignorant of the "true facts"; (3) that the plaintiff relied on the misrepresentation; (4) "injustice" from the government's conduct; and (5) that there would be no "undue damage to the public interest" from the application of equitable estoppel. *Rahimi v. Weinstein*, 271 F. Supp. 3d 98, 103 (D.D.C. 2017) (quoting *ATC Petroleum, Inc. v. Sanders*, 860 F.2d 1104, 1111 (D.C. Cir. 1988)).

Although the bar to adequately plead equitable estoppel is high, the Court concludes that equitable estoppel applies to Nelson's national origin claim given the Department's misleading

15

response to Nelson's email regarding that claim. To recap, Nelson asserts that the Department represented to him that it would "inform the EEOC of [his] request for submission of additional information" and that it would "provide . . . any update from [the Office of Federal Operations] on how to proceed in the submission of that information." Pl.'s Suppl. Br., Ex. 1 at 3; *see also* Pl.'s Suppl. Br. at 29. And Nelson contends that the Department's statement misled him so that he would not take other steps to preserve his national origin claim. *See* Pl.'s Suppl. Br. at 3.

When viewed in the light most favorable to him and with inferences drawn in his favor, Nelson's complaint alleges all of the relevant elements necessary for equitable estoppel. First, Nelson has alleged that the Department affirmatively made a false representation when it told him that it would forward his supplemental information to the EEOC and that it would notify him of what additional steps he should take to submit his national origin discrimination claim. *See* Compl. at 6; Pl.s Suppl. Br. at 3. In support of this allegation, Nelson points to a specific email from the Department's Office Civil Rights that stated "[a]s you have provided [the Office of Federal Operations] with this request via electronic mail, our Office will also inform the EEOC of your request for submission of additional information" and that the Department would "provide you or your representative any update from [the Office of Federal Operations] on how to proceed in the submission of that information, if you have not received such guidance." *See* Pl.'s Suppl. Br., Ex. 1 at 3. And Nelson has alleged—and the Department does not appear to contest—that the Department did not, in fact, forward the information to the EEOC or inform him of how he could submit that information. *See* Pl.'s Suppl. Br. at 29; *see also* Def.'s Mot. Dismiss at 12 ("The Department has not been able to identify contemporaneous emails indicating that [the Department] communicated further with the EEOC about the additional information that Plaintiff had sent.").

16

Second, Nelson was ignorant of the fact that the Department would not actually inform him of how to raise a national origin claim. In response to the Department's misleading statement, Nelson thanked the Department and informed the Department that he was waiting to hear how to proceed to provide information to the EEOC. *See* Pl.'s Suppl. Br., Ex. 1 at 2. Third, Nelson relied on the Department's representation that it would inform him of what he needed to do to raise a national origin discrimination claim with the EEOC. Subsequent emails indicate that Nelson believed that informing the Department of his national origin claim would allow that claim to be brought to the EEOC's attention. *See id.* ("You will note that I raised the national origin discrimination the day I discovered the documents that so clearly evidenced it . . . .").

Fourth, the Court concludes that it would be unjust to permit the Department to mislead Nelson about submitting his supplemental information to the EEOC. The Department's email response at the very least implied to Nelson that his supplemental information about national origin discrimination would be brought to the EEOC's attention and that the Department would inform him of how to proceed with that information. It would be unjust to permit the Department to now use a limitations argument to prevent Nelson from bringing his national origin claim. And fifth, the Court finds that applying equitable estoppel here would not unduly damage any public interest. This is so because "Title VII reflects the strong public interest in eradicating discrimination from the workplace" and applying equitable estoppel here effectuates that interest. *See America v. Preston*, 468 F. Supp. 2d 118, 124 (D.D.C. 2006) (citation omitted). Additionally, "the public interest in ensuring that the Government can enforce the law free from estoppel [may] be outweighed by the countervailing interest of citizens in some minimum standard of decency, honor, and reliability in their dealings with their Government." *Heckler v. Cmty. Health Servs. of Crawford Cnty., Inc.*, 467 U.S. 51, 60–61 (1984); *Bunting v. R.R. Ret.*

*Bd.*, 7 F.3d 232 (6th Cir. 1993) (concluding that public interest would not be harmed by estoppel where government misled plaintiff leading to serious injustice). Accordingly, the Court concludes that equitable estoppel applies to prevent the Department from utilizing a timeliness defense with respect to Nelson's national origin discrimination claim.

\* \* \*

Even if the Court finds equitable tolling and equitable estoppel, however, the Court must determine whether to instruct Nelson to file—and attempt to exhaust—his national origin discrimination claim at the Department in the first instance. As relevant here, the futility exception to exhaustion "excuses a party from exhausting [his] administrative remedies where resort to the administrative process would be futile." *Hous. Study Group v. Kemp*, 739 F. Supp. 633, 639 (D.D.C. 1990). And "[r]esort to the administrative process is 'futile' if 'the agency will almost certainly deny any relief either because it has a preconceived position on, or lacks jurisdiction over, the matter.'" *Id.* (quoting *Randolph-Sheppard Vendors of Am. v. Weinberger*, 795 F.2d 90, 107 (D.C. Cir. 1986)).

The Court concludes that requiring Nelson to file his national origin discrimination claim with the EEOC in the first instance would be futile in this case. As the Department itself acknowledges, if the Court were to instruct Nelson to pursue exhaustion with the Department in the first instance, "the Department expects that it would find that Plaintiff was not entitled to equitable tolling for the period between the time of the alleged acts in 2014 and the present." Def.'s Mot. Dismiss at 9; *see also* Def.'s Reply Supp. Mot. Dismiss at 3 (arguing that "even evaluated under the equitable estoppel framework, Plaintiff would not be entitled to relief"). Furthermore, as alleged by Nelson, the Department has consistently attempted to prevent Nelson from filing a claim or returning to service on the Russian desk. *See* Pl.'s Suppl. Br. at 8–9; *id.* at

18

12–14 (describing Department's "pre-judged fears" and efforts to avoid providing evidence). Given the Department's position in this litigation with respect to Nelson's claim and the Department's alleged actions of making evidence unavailable, the Court concludes that dismissing the national original claim without prejudice and requiring Nelson to re-file with the Department in the first instance would be futile because Nelson alleges that the Department has a preconceived position on the issues in this case. Accordingly, the Court denies the Department's motion to dismiss with respect to Nelson's national origin discrimination claim.

## V.  CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Renewed Motion for Partial Dismissal (ECF No. 73). An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  August 29, 2024                                                    RUDOLPH CONTRERAS
                                                                           United States District Judge